IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

GLENDA SEARS, Administratrix of the Estate )
of Harold Thomas Hobby, )
)
    Plaintiff, )
) No. 1:11-cv-00096
v. )
) Judge Nixon
CAROLYN W. COLVIN, ) Magistrate Judge Griffin
Acting Commissioner of Social Security, )
)
    Defendant. )

## ORDER

Pending before the Court is Plaintiff[1] Harold Thomas Hobby's Motion for Judgment on the Record ("Motion"). (Doc. No. 15.) On April 29, 2014, Magistrate Judge Griffin issued a Report and Recommendation ("Report") recommending that Plaintiff's Motion be denied and the decision of the Social Security Administration be affirmed. (Doc. No. 19 at 38.) On May 8, 2014, Plaintiff filed Objections to the Report (Doc. No. 20), to which the Commissioner did not respond. For the reasons stated below, the Magistrate Judge's Report is **ADOPTED** in part and **REJECTED** in part. The Plaintiff's Motion is **GRANTED** in part, the administrative decision is **VACATED**, and this case is **REMANDED** to the Commissioner for further proceedings. The Clerk of the Court is **DIRECTED** to close the case.

### I. STANDARD OF REVIEW[2]

The Court's review of the Report is *de novo*. 28 U.S.C. § 636(b) (2012). This review, however, is limited to "a determination of whether substantial evidence exists in the record to

---

[1] Following Mr. Hobby's death in 2012, Ms. Sears was substituted as Plaintiff in this matter. (Doc. No. 14.) For clarity, this Court will refer to Mr. Hobby as the plaintiff.
[2] The Court adopts the Magistrate Judge's description of the facts and procedural posture of this case. (Doc. No. 19 at 2–14.) The Court describes the facts only as necessary to facilitate analysis of the parties' arguments below.

support the [Commissioner's] decision and to a review for any legal errors." *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Title II of the Social Security Act provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Accordingly, the reviewing court will uphold the Administrative Law Judge's ("ALJ") decision if it is supported by substantial evidence. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Substantial evidence is a term of art and is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Comm'r of Soc. Sec.*, 105 F.3d 244, 245 (6th Cir. 1996) (citing *Consol. Edison*, 305 U.S. at 229).

"Where substantial evidence supports the [Commissioner's] determination, it is conclusive, even if substantial evidence also supports the opposite conclusion." *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc)). This standard of review is consistent with the well-settled rule that the reviewing court in a disability hearing appeal is not to weigh the evidence or make credibility determinations because these factual determinations are left to the ALJ and to the Commissioner. *Hogg v. Sullivan*, 987 F.2d 328, 331 (6th Cir. 1993); *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). Thus, even if the Court would have come to different factual conclusions as to the Plaintiff's claim on the merits than those of the ALJ, the Commissioner's findings must be affirmed if they are supported by substantial evidence. *Hogg*, 987 F.2d at 331.

## II.  HOBBY'S OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT

Hobby objects to Magistrate Judge Griffin's recommendation that the ALJ properly evaluated and weighed the opinions of Dr. Everett Howell, Advanced Practice Nurse ("APN") Melanie Stone, Dr. Alan Cohen, and state medical consultant Susan Warner. (Doc. No. 20 at 7–11.) Hobby also objects to Magistrate Judge Griffin's recommendation that the ALJ properly evaluated Hobby's subjective complaints of pain. (Doc. No. 20 at 12–15.) The Court examines each objection in turn.

### A. Pain and Credibility Assessment

Hobby contends the Magistrate Judge's recommendation that the ALJ correctly assessed Hobby's credibility and subjective complaints of disabling pain is error. In assessing a claimant's subjective complaints, including complaints of disabling pain, the ALJ follows a two-step analysis:

> First, the ALJ will ask whether the there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms. Second, if the ALJ finds that such an impairment exists, then he must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities.

*Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) (internal citations omitted). Here the ALJ determined that Hobby's underlying medically determinable physical impairments, including degenerative disc disease and chronic obstructive pulmonary disease ("COPD"), could reasonably be expected to produce his symptoms. (Tr. 27, 29.)[3] Therefore, the ALJ was required to evaluate the effects of Hobby's symptoms by considering the following:

> the claimant's daily activities; the location, duration, frequency, and intensity of symptoms; factors that precipitate and aggravate symptoms; the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms; other treatment undertaken to relieve symptoms; other measures taken to relieve

---

[3] The Administrative Record is available electronically at Docket Number 10.

symptoms, such as lying on one's back; and any other factors bearing on the limitations of the claimant to perform basic functions.

*Id.* (citing 20 C.F.R. § 416.929).

The ALJ considers the claimant's credibility as part of the assessment of the effects of the claimant's symptoms. *Titles II & XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements*, Soc. Sec. Ruling 96-7P, 1996 WL 374186, at *3 (1996). "[W]hile credibility determinations regarding subjective complaints rest with the ALJ, those determinations must be reasonable and supported by substantial evidence." *Rogers*, 486 F.3d at 249. The ALJ must consider the entire case record, and "[c]onsistency of the various pieces of information contained in the record should be scrutinized. Consistency between a claimant's symptom complaints and the other evidence in the record tends to support the credibility of the claimant." *Id.* at 247–48.

The ALJ determined Hobby's complaints were only partially credible and found he was capable of working at the "light exertion level without experiencing disabling pain." (Tr. 32.) The ALJ based this finding on the following: (1) Hobby's hypertension and diabetes are controlled with medication and he has required only "occasional and conservative treatment for infrequent symptoms of COPD"; (2) the joint and branch nerve block injections he received do "not appear to have been justified, given the results of physical examination [sic] performed by treating sources as well as the results of x-rays and diagnostic testing of record"; (3) Hobby's "activities of daily living remain virtually unlimited"; (4) "[t]here is no objective evidence of record that the claimant's experiences [sic] any disabling side effects from prescribed medications"; and (5) "based upon the claimant's sporadic work history, it is reasonable to infer that the claimant lacks the motivation to work." (Tr. 31.) Upon review of the evidence, the Court

4

agrees that the ALJ's explanations for his credibility finding, and the assessment of the effects of Hobby's symptoms, are neither reasonable nor supported by substantial evidence.

First, the fact that Hobby's hypertension and diabetes are controlled with medication is irrelevant to the determination of whether Hobby's complaints of disabling pain are credible because Hobby and his medical sources do not attribute his pain to hypertension and diabetes, but to disorders of the back. (*See, e.g.*, Tr. 57, 356, 448, 508.) Likewise, although Hobby and the medical sources of record attribute some of his limitations to COPD, Hobby's COPD is also not the source of his allegedly disabling pain. (*See, e.g.*, Tr. 57, 59, 508.)

Second, aside from his own opinion, the only evidence the ALJ cited to support his conclusion that Hobby's injections were not "justified" are the medical reports of treating physician Dr. Frances Berry Brown. (Tr. 30.) However, Dr. Brown's records do not indicate that spinal injections were unnecessary to control Hobby's pain. To the contrary, the records indicate Hobby visited Dr. Brown twice in September 2007 complaining of back and leg pain and that he "can't hardly walk" for the last year. (Tr. 340, 342–43.) Dr. Brown referred Hobby to a cardiologist in September 2007 (Tr. 343), and when the cardiologist found Hobby had "[n]ormal coronary arteries" and raised the concern of "a nonvascular cause of his symptom pattern such as . . . spinal stenosis for the leg pains" (Tr. 325), Dr. Brown referred Hobby to Dr. Everett Howell for a neurosurgical consultation (Tr. 331, 333). In December 2007, Dr. Howell found Hobby had "significant lumbar and cervical stenosis and . . . persistent and chronic pain as a result" (Tr. 356) but because there were "no signs of any fracture or instability of the vertebrae in [Hobby's] back or . . . neck," he did not recommend surgical intervention (Tr. 357). In January 2008, Hobby visited Dr. Brown again complaining of back and neck pain, and reported that he tried physical therapy in the past but it made his pain worse. (Tr. 385.) Dr. Brown prescribed Mobic

5

and Flexeril to treat Hobby's back pain and muscle spasms. (Tr. 386.) In February 2008, Hobby returned to complain that the Mobic was not helping his back pain. (Tr. 389.) When Hobby entered treatment at Spectrum Pain Clinics, Dr. John Faccia indicated Hobby's nerve block injections were indicated because "the patient has moderate to severe pain that is not adequately addressed by conservative measures." (Tr. 489.)

The ALJ's conclusion that Dr. Brown's records show Hobby's injections were unnecessary is not supported by evidence because Dr. Brown's records indicate only that Hobby experienced severe back pain throughout the treatment relationship, and that the back pain was not responsive to Hobby's prescribed medications. Furthermore, Hobby received his first injection in August 2008, but the record does not include notes from Dr. Brown dated after February 2008. Under these circumstances, Dr. Brown's records are not evidence that Hobby's injections were unnecessary because the records do not show Hobby's condition at the time he began receiving injections. The Court notes that the ALJ's Decision does not review Dr. Brown's records in chronological order or accurately relay the timeline of events at issue; for instance, contrary to the ALJ's description, appointments held in September 2007 cannot be "follow-up visits" to an appointment held in November 2007. (Tr. 30.)

Third, contrary to the ALJ's assessment, Hobby's activities of daily living are limited. When the ALJ asked Hobby about his daily activities, Hobby explained, "I do less as possible [sic] because . . . the more I do, the more I hurt." (Tr. 49.) At the hearing, Hobby stated that he is able to dress and bathe himself, do laundry, clean up his dishes, watch television, and change his sheets, but he does not shop for food or clothing, or prepare his own meals. (Tr. 50–51.) The Court finds these activities are somewhat minimal, not "virtually unlimited." Furthermore, the ALJ failed to account for the work-related limitations described by Hobby. For instance, Hobby

6

explained that he had muscle pain when he tried to walk, and that "if I pick up anything . . . my neck cramps, and it gives me muscle spasms." (Tr. 50.) Furthermore, he cannot walk far because he gets "out of breath" and had to stop fishing and hunting. (Tr. 51.) Hobby needs to alternate between sitting and laying down because his "neck gets to hurting." (Tr. 54.) Hobby stated that he could sit and stand for "maybe an hour" at a time. (Tr. 54.) The ALJ does not mention these limitations or account for them in his assessment of Hobby's residual functional capacity. The Court finds that Hobby's hearing testimony is consistent with the medical evidence of record and that Hobby's reports of his daily activities do not constitute evidence that Hobby is not credible.

Fourth, the ALJ found Hobby's complaints were not credible because "there is no objective evidence of record that the claimant's experiences [sic] any disabling side effects from prescribed medications." (Tr. 31.) However, the Court has been unable to find any indication that Hobby claimed side effects contributed to his pain or his alleged disability. The Court does not understand, nor did the ALJ explain, why this information is relevant to Hobby's credibility. However, as described above, the record shows Hobby has taken multiple pain medications in an effect to manage his symptoms. Aside from the injections, which the ALJ deemed "not . . . justified," the ALJ does not mention any of Hobby's medications in his analysis.

Finally, the ALJ concluded that Hobby "lacks the motivation to work" based on the fact that Hobby worked part-time and did not earn enough in the last five years for his earnings to be considered "substantial gainful activity." (Tr. 31.) The claimant's work history is an appropriate consideration in the ALJ's credibility determination, and a poor work history may support an adverse credibility determination. 1996 WL 374186 at *5; *Schaal v. Apfel*, 134 F.3d 496, 502 (2d Cir. 1998). However, a poor work history might also support an inference that the claimant is credible because "[a] claimant's failure to work might stem from her inability to work as easily

7

as her unwillingness to work. Therefore, a consideration of work history must be undertaken with great care." *Schaal*, 134 F.3d at 502. In this case, Hobby's long history of part-time work (Tr. 186–94) may support an adverse credibility determination. However, significant other evidence exists in the record indicating that Hobby was unable to perform additional work during this time period. For instance, Hobby's back problems first interfered with his ability to work in 1996 (Tr. 176), and he testified that he had to quit his part-time farming job because "[i]t just got to be more than I could handle. I couldn't get up and down, and then my—the arthritis and stuff, and my back being bad. And, also, having neck injuries." (Tr. 45.) Before Hobby quit working, he missed work "[t]wo, three days a week sometimes" because his back and neck pain were so extreme. (Tr. 58.) The ALJ does not mention this testimony or any of the other evidence that tends to support Hobby's credibility. In any case, even if there is sufficient evidence on this point to support the ALJ's determination that Hobby was not motivated to work, the Court finds this lone evidence is insufficient to support an adverse credibility determination or discount Hobby's complaints of disabling pain because his complaints are otherwise consistent with the record and this equivocal finding does not constitute substantial evidence.

Upon review of the record, this Court was unable to identify any inconsistencies between Hobby's complaints and the other evidence to indicate Hobby was not credible. Furthermore, "[t]he decision in this case fails to contain specific reasons for the finding on credibility, supported by the evidence in the case record, nor is it sufficiently specific to make clear to the individual and to any subsequent reviews the weight the adjudicator gave to [Hobby's] statements and the reasons for that weight." *Rogers*, 486 F.3d at 249 (citations and internal quotation marks omitted). Because the ALJ's credibility determination and decision to discount

Hobby's subjective complaints is not supported by substantial evidence, the Magistrate Judge's Report on this point is **REJECTED** and Hobby's Motion on this point is **GRANTED**.

*B. Dr. Everett Howell*

Hobby objects to the ALJ's failure to cite the opinion of Dr. Everett Howell, who Hobby contends is a treating source whose opinion is entitled to controlling weight. (Doc. No. 20 at 8.) Under 20 C.F.R. §§ 404.1502 and 416.902, a "treating source" is defined as the claimant's "own physician, psychologist, or other acceptable medical source who provides [the claimant], or has provided [the claimant], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]." *Accord Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013), reh'g denied (May 2, 2013). A treating source must have seen the claimant "'with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition.' A physician seen infrequently can be a treating source 'if the nature and frequency of the treatment or evaluation is typical for [the] condition.'" *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007) (quoting 20 C.F.R. § 404.1502) (holding physician who treated claimant once was not a treating source).

Hobby saw Dr. Howell for a neurosurgical consultation in December 2007 at the recommendation of Dr. Frances Berry-Brown. (Tr. 346–47, 356.) Pursuant to Dr. Howell's orders, Dr. Michael J. Spellman performed a series of lumbar x-rays. (Tr. 354.) Dr. Howell then reviewed the x-rays and determined Hobby was not a candidate for surgery. (Tr. 355, 356.) Dr. Howell performed a single consultative examination on Hobby, thus Hobby and Dr. Howell did not have an ongoing treatment relationship. Dr. Howell also did not see Hobby with the nature and frequency of the treatment typical for someone experiencing chronic back pain caused by

degenerative disc disease. Accordingly, the Court concurs with the Magistrate Judge's determination that Dr. Howell is not a treating source.

Medical opinions from examining, non-treating sources are never entitled to controlling weight; however, the ALJ is required to consider such opinions, and failure to do so is grounds for reversal unless the failure is harmless error. 20 C.F.R. § 404.1527(c); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004) (explaining harmless error findings as applied to treating physicians); *Dykes ex rel. Brymer v. Barnhart*, 112 F. App'x 463, 468 (6th Cir. 2004) (applying harmless error standard to non-treating sources). The ALJ's failure to mention Dr. Howell's opinion is harmless error if the ALJ ultimately "makes findings consistent with the opinion." *Wilson*, 378 F.3d at 547. Dr. Howell opined that Hobby's "ability to do work is certainly limited by his pain . . . [he] would not be able to do so [sic] type of moderate to heavy activity." (Tr. 356.) The ALJ concluded that Hobby has the residual functional capacity to perform "light work." (Tr. 28.) *See* 20 C.F.R. § 404.1567 (physical exertion requirements). The Court concurs with the Magistrate Judge's conclusion that the ALJ's failure to mention Dr. Howell's opinion was harmless error, and Hobby's Motion on this ground is **DENIED**.

*C. Advanced Practice Nurse Melanie Stone*

Hobby next objects to the Magistrate Judge's conclusion that the ALJ appropriately determined Stone's Residual Functional Capacity ("RFC") assessment was entitled to "little weight because it was not supported by her treatment notes and was inconsistent with the record." (Doc. No. 19 at 30.) According to Hobby, this conclusion "just does not make sense" because Stone's opinion is consistent with the record. (Doc. No. 20 at 11.)

Nurse practitioners are "other sources" whose opinions must be considered and weighed by the ALJ. 20 C.F.R. § 404.1513(d)(1); *Titles II & XVI: Considering Opinions & Other*

*Evidence from Sources Who Are Not "Acceptable Medical Sources" in Disability Claims; Considering Decisions on Disability by Other Governmental & Nongovernmental Agencies*, Soc. Sec. Ruling 06-03P, 2006 WL 2329939, at *6 (Aug. 9, 2006). Other source opinions "should be evaluated by using the applicable factors, including how long the source has known the individual, how consistent the opinion is with other evidence, and how well the source explains the opinion." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007). The ALJ "should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." 2006 WL 2329939 at *6; *see Cruse*, 502 F.3d at 541. The ALJ's failure to adequately address other source opinions or articulate his reasons for rejecting them justifies remand where the failure prevents the reviewing Court from assessing whether the administrative decision is supported by substantial evidence or otherwise deprives the claimant of a substantial right. *See Sommer v. Astrue*, No. 3:10-cv-99, 2011 WL 766184, at *4 (E.D. Tenn. Feb. 25, 2011) (citing *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

The ALJ found that Stone's RFC assessment, that Hobby was "incapable of performing even sedentary work on a full time basis due to hypertension, [COPD], arthritis, diabetes, back pain, muscle spasm and spinal stenosis," was entitled to "less weight" because it was "unsupported by and inconsistent with the evidence of record when considered in its entirety." (Tr. 31.) The ALJ reviewed Stone's treatment notes and found that Hobby's "office visits [with Stone] were rather routine in nature and did not indicate the need for impatient hospital care, steroid injections or any extraordinary medical therapy. Nor was the claimant ever noted in her reports to be experiencing intractable pain." (Tr. 30.) First, the Court notes that a history of

11

"routine" office visits to treat other health problems does not undermine Stone's RFC if the treatment notes otherwise support her findings. Second, contrary to the ALJ's assessment, the Court finds that Stone's records indicate that Hobby complained regularly about the extent of his pain, and that Stone's records appear to support her RFC assessment.

For instance, although the ALJ's Decision describes the subject of Hobby's October 17, 2008, visit as "vision changes" (Tr. 30), the record indicates that Hobby "is going to pain management" and "complaining that he can't sleep due to pain. States that the pain medication that he was given by pain management doesn't work, and that he told them that it keeps him awake." (Tr. 446.) The ALJ's Decision describes the subject of Hobby's November 25, 2008, visit as "elevated blood sugar" (Tr. 30), but the treatment notes from that date indicate Hobby also complained about "muscle spasms and muscle pain" and was seeking a specialist referral for the issue. (Tr. 444.) The ALJ described Hobby's December 8, 2008, visit as about "sore throat & sinus congestion" (Tr. 30), but Hobby also wanted to discuss Zonegran, which he was apparently prescribed off-label to treat the "fibromyalgia type pain which he has" (Tr. 442). The ALJ indicated Hobby visited the clinic on February 19, 2009, for a "refill of medication" (Tr. 30), but the records show Hobby visited for "persistent pain knees and lower back" and felt "he may need a 'shot' for pain today, as his medication[s] are not holding him like they used to. He reports he has been out of work for the past 6 months to this chronic pain issues" and his physical examination revealed "lumbosacral paraspinal tenderness to palpitation, muscle tightness palpable" (Tr. 437). The ALJ stated Hobby visited on March 31, 2009, for a "refill of medication to help him sleep and to get handicap permit completed" (Tr. 30), but the treatment notes from that date again show Hobby requested a shot for pain, that he was still out of work due to pain, and that his physical exam showed palpable muscle spasms (Tr. 435). The ALJ stated Hobby

visited on April 13, 2009, to "follow-up on lab work" (Tr. 30), but the records also indicate Hobby was "taking sonogram for fiber myalgia [sic], he is not sure it's working out requested he wean off this medication" (Tr. 434). On August 3, 2009, Hobby requested pain medication refills and still had "cervical and lumbosacral paraspinal tenderness to digital palpitation, muscle spasms palpable." (Tr. 428.) On August 21, 2009, Hobby again complained about pain, stating that the Mobic he took may have "increase[d] his GI complaints" so he was instructed to stop taking the drug, but he restarted it when his chronic pain increased off the medication. (Tr. 424.)

The ALJ addressed relevant findings in only one of Stone's records, noting that "[w]hile the musculoskeletal examination did reveal some tenderness to digital palpitation and palpable muscle tightness, the claimant's straight leg raising was negative bilaterally and his deep tendon reflect was 2+, bilaterally. There was no edema or paresthesias of the lower extremity, no lymphadenopathy, no calf tenderness, no varicosities, edema or cyanosis." (Tr. 31.) Hobby's primary complaint is back pain, thus the results of the musculoskeletal examination—which support Hobby's position and Stone's RFC—are relevant. Neither the straight leg test, which tests for a herniated disc, nor the deep tendon reflex test, which tests for neurological issues, is dispositive or indicates that Stone's findings are not supported by her clinical observations of Hobby. Furthermore, the lack of edema, paresthesias, lymphadenopathy, calf tenderness, varicosities, and cyanosis appears completely irrelevant to Stone's assessment of the functional limitations caused by Hobby's back pain. After eliminating the irrelevant, the only remaining observation—spinal tenderness and palpable muscle tightness—apparently supports Stone's RFC assessment.

In short, contrary to the ALJ's finding, Hobby's visits to Stone's practice were not merely "routine" and Hobby appears to have made repeated and persistent complaints about his pain

throughout the treatment relationship. The ALJ ignored the thrust of the evidence in assessing the Stone records. Therefore, although the ALJ explained the weight given Stone's assessment and his reasons for according it such weight, the ALJ's rationale does not appear to be supported by substantial evidence. Accordingly, the Magistrate Judge's Report is **REJECTED** and Hobby's Motion is **GRANTED** as to this issue.

### D. Dr. Alan Cohen and State Medical Consultant Susan Warner

Hobby objects to the Magistrate Judge's conclusion that the ALJ properly evaluated the opinions of Dr. Alan B. Cohen and Susan Warner, both medical consultants who did not treat or examine Hobby. (*See* Tr. 381, 397.) If the claimant's treating physician's opinion is not afforded "controlling weight," nonexamining source opinions must be considered pursuant to the factors enumerated in § 404.1527(c). *Gayheart*, 710 F.3d at 376; *accord* 20 C.F.R. § 404.1527(b) ("we will always consider the medical opinions in your case record"). The ALJ did not afford Hobby's treating physician opinions controlling weight (*see* Doc. No. 19 at 22–23, 25–26), thus the ALJ was required to evaluate the opinions and "explain in the decision the weight given to the opinions . . . as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources." 20 C.F.R. § 404.1527(e)(2)(iii). "An ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence" and is grounds for remand. *Gayheart*, 710 F.3d at 379; *accord Tiger v. Apfel*, 141 F.3d 1186 (10th Cir. 1998).

The ALJ did not name Dr. Cohen or Warner, but he did refer generally to the findings of the "state agency consultants," noted that they both found Hobby "retained the ability to perform the mental and physical requirements of basic work-related activities," and determined their opinions "are worthy of some weight, particularly in a case such as this, wherein there exist [sic]

14

a number of other reasons to reach similar conclusions." (Tr. 32.) Hobby contends that it was error for the ALJ to "simply lump[] their opinions together and assign[] them 'some weight.'" (Doc. No. 20 at 10.) Dr. Cohen found Hobby "capable of less than a full range of sedentary work" (Tr. 381), and according to the Vocational Expert, Hobby would be unable to perform any competitive employment in the national economy with such restrictions (Tr. 65). However, Warner found Hobby "capable of a medium range of work." (Tr. 397.)

Although the ALJ specified that he gave the consultant opinions "some weight," the Court finds that in these circumstances, the ALJ's assessment of the consultant opinions was simply not meaningful enough to constitute an explanation of the weight assigned their opinions. Compared to the rigorous analysis given other medical opinions, "his decision does not acknowledge equivalent inconsistencies in the opinions of the consultative doctors. A more rigorous scrutiny of the treating-source opinion than the nontreating and nonexamining opinions is precisely the inverse of the analysis that the regulation requires." *Gayheart*, 710 F.3d at 379. Furthermore, the ALJ's decision does not take into account any of the factors enumerated in § 404.1527(c) in comparing Dr. Cohen and Warner's opinions. For instance, the ALJ appears to give the two the same weight without acknowledging that Warner's opinion, unlike Dr. Cohen's (Tr. 380), did not take into account the opinions of Hobby's treating or examining sources (Tr. 396). Furthermore, Dr. Cohen's report does not support the ALJ's conclusion—in fact, adherence to Dr. Cohen's findings would support a determination that Hobby is disabled.

"An ALJ must not substitute his own judgment for a doctor's conclusion without relying on other medical evidence or authority in the record. *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000); *Sigler v. Secretary of Health and Human Servs.*, 892 F.Supp. 183, 187–88 (E.D. Mich. 1995). When there is a conflict in the evidence, the ALJ may choose what evidence to

credit but 'cannot reject evidence for no reason or for the wrong reason.' He must consider all of the evidence and give some reason for discounting the evidence rejected. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999)." *Lenon v. Apfel*, 191 F. Supp. 2d 968, 977 (W.D. Tenn. 2001). In this case, the ALJ did not credit Hobby's treating physicians, mischaracterized or ignored the evidence from other medical sources, then, when left with two conflicting opinions from state agency consultants, failed to explain his reasoning for adopting or ignoring parts of either opinion. The ALJ's failure to consider the evidence or explain his reasoning denotes a lack of substantial evidence. Accordingly, the Court **REJECTS** the Magistrate Judge's conclusion and Hobby's Motion as to this issue is **GRANTED**.

### III. CONCLUSION

For the reasons stated above, the Court finds the ALJ's opinion was not supported by substantial evidence. The Court **ADOPTS** the Magistrate Judge's Report in part and **REJECTS** the Report in part. The Court **GRANTS** Plaintiff's Motion in part, **VACATES** the administrative determination, and **REMANDS** this matter to the Commissioner for further proceedings consistent with this Order. The Clerk of the Court is **DIRECTED** to close this case.

It is so ORDERED.

Entered this the ___ day of June, 2015.

JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT